# Appeal of the Third Reformed Dutch Church.

Where the members of a church corporation brought a suit for its benefit, though not in its name, against its trustees, it cannot, after it has accepted and enjoyed the benefit of a decree in its favor, say that the proceeding was not prosecuted in its behalf, and bring a suit in its own name to compel an account and allege that it was not bound by such portions of the decree as were unfavorable to it.

January 30th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas, No. 2, of *Philadelphia county:* Of January Term 1878, No. 262.

This was a bill in equity, filed by the Third Reformed Dutch Church, against Henry J. Fox and others, trustees, &c. The bill sets forth that the plaintiff was the owner of certain property, including a lot and church buildings thereon held in trust for members adhering to the church discipline of the Reformed Church in America; that on June 9th 1873, the defendants, duly elected trustees under the charter of the corporation plaintiff, became members of the Emmanual Presbyterian Church, an unincorporated body belonging to the Presbyterian Church, and conducting its services in a different form, and not maintaining the mode of faith and church discipline of the Reformed Church in America; that by so doing they ceased

to be members and trustees of the corporation plaintiff; that they had refused to surrender plaintiff's property, retaining it in their possession from June 9th 1873 to November 23d 1876, and misapplied its proceeds to the uses of the Presbyterian Church; that during said period defendants had collected profits and pew-rents to the amount of $9000, for no part of which they have accounted; that on February 14th 1874, Daniel S. Jones and others, members of the corporation plaintiff filed a bill in equity against Rev. Charles Wadsworth for a decree for the surrender of all the plaintiff's property, in which, on November 21st 1876, the court entered a decree in accordance with the prayer of the bill; that an appeal was taken from this decree by plaintiff therein, who alleged that the court erred in not directing an account; that on February 19th 1877 the Supreme Court affirmed the decree of the lower court, in obedience to which the defendants surrendered the church property to Jones, the only remaining trustee who had not joined the Presbyterian body; that to that suit the plaintiff was not a party; that the defendants have refused to account for the proceeds of the property; that defendants have severally brought actions at law against the complainants upon three promissory notes, to the amount of $2800, to which plaintiff has a defence by way of set-off, exceeding their claims, in the rents and profits of the plaintiff misapplied by the defendants. The bill prayed for an account, an injunction to restrain the actions at law, discovery and general relief. The defendants demurred on the ground that the right to an account was *res adjudicata* in Jones *v.* Wadsworth; that the bill was multifarious; and that damages from a tort were not subjects of set-off at law.

. The court, Hare, P. J., sustained the demurrer in an opinion, saying:

. " This case comes before us on a demurrer to a bill filed by the Third Reformed Dutch Church against Henry J. Fox and nine others, praying for an account, and that the defendants be restrained by an injunction from prosecuting certain suits which they have brought against the complainant. It appears, that the defendants were, together with one Daniel S. Jones, trustees of the corporation plaintiff, and held, or were possessed of its personal and real estate, and collected the rents and profits, and that upon a bill filed against them by Jones and others, as members of the church, they were removed from the trust, and directed to deliver the property in their hands to Jones, as the only remaining trustee; but it also appears that the court refused to order them to account for the rents and profits, thus virtually excepting so much of the fund as had been derived from that source from the operation of the decree. The complainant took an appeal from this portion of the decree, but it was confirmed by the court above, and the defendants' contention is that the question raised by the present bill is *res adjudi-*

*cata,* and having been determined by a competent tribunal, cannot be again put at issue.

"The complainant's counsel made an ingenious argument in reply to this defence, which may be ranged under the following heads:

"1st. This proceeding is instituted by the church as a corporation, while the former bill was filed by the church members on its behalf, and as the parties are not the same there can be no estoppel.

"2d. The question was not before the court in the former suit, because the bill did not pray for an account, and when the complainant asked for leave to amend, it was refused.

"3d. Agreeably to Winebrenner *v.* Colder, 7 Wright 244, the point could not arise under a bill filed by the members of the church, as such, nor until it was restored to its normal condition through the reorganization which has since occurred.

"4th. The decree under the first bill is in its literal acceptation self contradictory, and should receive a liberal interpretation. It cannot be that the court meant to declare that the remaining trustee, Jones, was entitled to receive the property of the corporation, and yet deny him the account which might be requisite to ascertain and enforce the right established by the decree. Conceding that the defendants were not answerable for so much of the rents and profits as they had laid out in good faith for purposes which, though not strictly authorized, were yet cognate to the trust, it would still be their duty to make good whatever sums were wilfully misappropriated, and to pay over any amount that remained unspent.

"The argument under the first point is manifestly unsound. Judgments not only bind parties but privies, or, in other words, persons who, though not actually before the court, are yet in contemplation of law represented by those who appear or have been duly summoned. It is not always easy to apply the rule, but we shall seldom err if we follow this criterion. Could the person whom an adverse decree or judgment is alleged to bind, rely upon it as conclusive if it were in his favor? Taking this as the test, there can be no doubt here, because the plaintiff concedes, and it is, indeed, part of the case set forth in the bill, that the defendants are precluded from alleging that the property in their hands could be diverted from the Dutch Reformed Church, or used for the support of any other sect or denomination. It is a rule of common sense as well as of jurisprudence, that no one shall impugn the foundation upon which he builds, and as the corporation plaintiff has the benefit of the decree, so it must accept the burden, and cannot rely on that part which makes for it and reject the rest.

"The second ground on which the complainant seeks to escape from the conclusive operation of the decree is also insufficient. In determining whether a question is sufficiently before a court to be a subject of adjudication, we must be guided by the pleadings, and there can be no doubt that a bill asking for the removal of a trus-

[Appeal of Third Ref. Dutch Church.]

tee for mismanagement, and that he be compelled to deliver up the property in his hands, implies a prayer for an account, as a necessary and proper means to attain the end in view; but if this were not so, an account might be clearly decreed under the general prayer for relief, as being incident to it, and in accordance with the drift and tenor of such a bill. This proposition does not conflict with the complainant's argument, which is in itself entirely just, that the refusal of a court to permit a distinct subject of litigation to be introduced by amendment during the course of a suit at law or in equity, is simply what it purports to be, a declaration that the matter will not be considered then and there, and does not preclude the party from resorting to any remedy that would have been open to him if the amendment had not been proposed and rejected.

" The third point made by the complainant cannot be sustained. It is, as we have seen, that the decree, when duly interpreted, is not that the outgoing trustees shall be exonerated from accounting, but that so much of the fund as was actually expended for the salary of the minister and the maintenance of divine worship, shall be viewed as money laid out for the use of the congregation. In plain terms this is an allegation that the court committed a mistake in declaring that the defendants were not under an obligation to account, when what it meant, and should have said was, that they might account in a particular way.

" If such a mistake had actually been made, it could not be investigated or corrected here, because a court has no power to revise the judgment of a co-ordinate tribunal and set it aside as contrary to the evidence or erroneous in point of law. *Interest reipublicæ ut sit finis litium*, and the rule depends on considerations which concern the parties not less than the community at large. If the first judgment could be thus subverted, the second might share the same fate, and the unhappy litigants would be enclosed in a vicious circle, from which there would be no escape. No hardship, however great, will justify a departure from this principle; and one who reads the able and well-considered opinion of Judge Allison, will be slow to believe that there is such hardship here, or that he overlooked the obvious point now pressed with so much earnestness by the complainant. Had it been contended or alleged before him that the defendants held an unexpended balance, or that they had diverted the funds of the church to their own use, he would unquestionably have ordered them to account; but it is not less clear that if it was tacitly conceded that the whole fund had been laid out in keeping the church open for the use of the congregation, and supplying them with spiritual food, such a decree might properly be refused on the ground of equitable estoppel indicated in the court below, and adopted by the Supreme Court when the case came before them on appeal.

" The fourth point still remains, and is not free from difficulty.

If, as the case of Winebrenner *v.* Colder imports, the demand for an account was premature, and rejected on that ground, the church is not precluded from renewing its application.   An adjudication does not operate as an estoppel, unless the merits are before the court, and can legally be considered.   A judgment at law speaks for itself, and will not be narrowed or enlarged by the reasons given for the decision, but in considering a decree in equity we may look to the opinion of the court for an explanation of the extent and operation of the decree.   If Judge Allison relied on the ground of estoppel in refusing an account, he also relied on the want of proper parties, and on the authority of Winebrenner *v.* Colder.   On the other hand, the Supreme Court gave as their sole reason that there had been such encouragement and acquiescence as justified a chancellor in refusing to interfere.

" The question may be a doubtful one, in view of these considerations ; but I need not pursue the inquiry further, because what has been said renders it plain that we cannot proceed in this case without intruding on ground that has been preoccupied.   This might not be enough to justify the dismissal of the bill, if this were the only court open to the church, and it could not knock at any other door ; but we think that there is another remedy more in harmony with Winebrenner *v.* Colder, and the fundamental rules of equity procedure.

" The proceedings under the former bill culminated in an order on the defendants to surrender the property which they held to Jones, as the duly authorized representative of the church, and the only party qualified to act on its behalf.   It is on that decree that the whole fabric of the bill depends, and if the complainant is entitled to an account, it is as a means of carrying the decree into effect.   Moreover, the complainant claims, so far as this litigation is concerned, through Jones, and is subject to all the considerations which would have affected him.   Now, agreeably to the argument which has been pressed upon us, and it is the only one on which the complainant can succeed, what the court determined in the original suit was in effect not that the defendants were not under an obligation to account, but that such a decree could not legitimately be made until the existing disorder had been remedied, and then only at the instance of the corporation or of its trustees.   Adopting this view of the case, and taking it for granted that the defendants have withheld some portion of the fund to which Jones was entitled under the decree, the proper course for Jones, or for the complainant, coming forward in his stead, obviously is not to have recourse to another tribunal, but to file a supplemental bill in the court which pronounced the judgment, setting forth the order which it had made, the wrong done by the defendants in refusing to obey, and asking for a discovery and account as a means for making the order effectual.   As between co-ordinate jurisdictions, that which

first attaches is exclusive, and it is not less clear that jurisdiction does not cease on judgment, but extends to all the measures requisite to execute the judgment. Hence, when the object is not to establish a controverted right, but to enforce one that has been adjudicated, the proper tribunal is that which rendered the decree, and other courts should refuse to intervene, unless the circumstances are such that relief cannot be given in the original form. If the rule were not legally imperative, it should still be observed in deference to comity and to prevent the conflict of jurisdiction which might otherwise ensue. It follows that if the complainant is entitled to a remedy, it must be sought elsewhere, and the bill is consequently dismissed, without prejudice to the right to apply to the Court of Common Pleas, No. 1, for the decree which we refuse."

From this decree this appeal was taken.

*C. S. Patterson* and *W. A. Porter*, for appellant.—The right to account is not *res adjudicata*, for in Jones *v.* Wadsworth, the bill was filed by individual members of the church, not as here by the corporation. That bill contained no prayer for an account and leave to amend by adding such a prayer was refused, and the decree there cannot be conclusive as to the plaintiff, even if it was a party to Jones *v.* Wadsworth. Where a judgment in a former case is relied upon as conclusive, in another it may be shown by evidence aliunde, that the particular point was not adjudicated: Colman's Appeal, 12 P. F. Smith 252. Here it is shown by the record that the question of account was not raised.

*A. B. Shearer*, for appellees.—The complainants in the former case were members of the Reformed Church, for whom the property was held in trust, and were the corporation. Those who adhere to the regular organization are the true church: Winebrenner *v.* Colder, 7 Wright 256; and the plaintiffs in both actions were therefore substantially the same. The effect of a decree cannot be avoided by the substitution of a party differing only in name: Peterson *v.* Lothrop, 10 Casey 223. A prayer for the removal of a trustee for mismanagement, and for the delivery of the property in his hands, implies a prayer for an account. It is also included in the prayer for general relief.

The judgment of the Supreme Court was entered March 3d 1879,

PER CURIAM.—Without adopting all the reasons assigned by the learned president of the court below, it will be enough to say that the former proceeding in equity relied on as a defence and the present was substantially between the same parties. The present corporation appellants accepted and have enjoyed the benefit of the decree in the first case so far as it was in their favor, and they

[Appeal of Third Ref. Dutch Church.]

ought not to be allowed now to say that the proceeding was not instituted and prosecuted for their benefit. The complainants representing them in that case demanded an account in the interest of the corporation and it was refused. It was properly placed upon the ground of estoppel, because the whole congregation, including the sole remaining trustee, had acquiesced in the change of the ecclesiastical relations of the church, and it was not alleged then, nor is it alleged now, that a single dollar of the income was appropriated to any other than the legitimate purposes of the worship of God and the preaching of the Gospel. There is no equity in the demand now reiterated on the defendants to discover and account for the funds which it is conceded they received and paid out for the salary of the minister, and the other expenses of maintaining the church. The $9000 in pew-rents was evidently contributed for the very purposes to which it was appropriated.

Decree affirmed, and appeal dismissed at the costs of the appellants.